Good afternoon, your honors, or good morning, almost afternoon, your honors. Brian Layton on behalf of the appellants Marvin and Laura Horne and Raisin Valley Farms. With all the court's pressing needs and pressing cases, etc., it seems kind of unreal that we're here in the Ninth Circuit Court of Appeals arguing the fact that USDA, in order to provide timely notice, ought to be emailing and faxing instead of sending things by snail mail. Counsel, is there any statute that you can point to that specifically requires the agency to engage in rulemaking on this topic? Not on this specific topic, but yes. Well, let me then ask the following question. Are you aware of any case from this Court or the Supreme Court in which a court has ordered an executive branch agency to make a rule in the absence of congressional requirement that it do so? Your Honor, the 550, 5 U.S.C. Section 553e states that the agency is to entertain petitions for rulemaking, modifications for original rulemaking, or elimination of rules. 555, 555e requires the agency to make a rule. And is not specifically required to do so. That is set forth in our opening brief and in our reply brief. In the primary case, the U.S. Supreme Court case of Massachusetts v. EPA, the U.S. Supreme Court said that agencies, it's agency's refusal to engage in a rule or to institute a rule is subject to judicial review. But it is a very deferential standard of review wherein the agency, the courts don't want to get into the agency's business. In that case, the Supreme Court cited with approval the D.C. Circuit's case of American Horse Protection Association v. Ling, Secretary of Agriculture. And they talked about three different areas that the court should consider. First, the court should consider whether or not, since agencies have a specific expertise in the area, the courts want to give deference to the agencies so they don't tread on the agency's expertise in the area. In horse protection, the challenger didn't meet all three requirements. The court said if, unless all three of these are true, you can challenge it and there is a way to review it. I'm saying in this case the agency has no expertise whatsoever, or no special expertise as to whether things should be set out certified mail, regular mail, or hand delivery. Well, I mean, there would be a lot of other ways to fix the problem. And it's, i.e., our prior member of the dispo did note that there is a problem here. But there might be many other ways to fix it, and we're not in a very good position to tell them exactly what to do or even to do anything. But it seems to me that the problem here, or if you have any chance of succeeding, it's really more on the fact that they at least have an obligation to entertain it. I mean, those are the languages in some way that demonstrates that they consider this, they have some reasons for not doing anything about the problem. And the letter that you got doesn't tell you very much. So the real question is, I mean, even before we get to the merits of anything, should we be saying, well, at least tell us why you won't do this, why you won't do anything about the problem? Well, the only reason they cited for not doing anything about the problem is because Judge Wanger's citing Hornbach law is that normal certified mail normally is an efficient or sufficient way to provide notice. The problem in this case is Judge Wanger was ruling on our jurisdictional issue. As we know from previous panel decisions here, when the judicial officer issues a decision, you have a 20-day clock, which includes weekends, to file review before the U.S. district court. But they don't even say what you said they said in their letter to you. I mean, they did talk about Judge Wanger, but more in the context of why you should lose the case. They don't really talk about Judge Wanger's view on the merits of whether or not some other form of service or some other way of finding out what, in fact, they did should be entertained. I mean, they don't even say that much. No, they don't. That's the problem, is they're relying on what Judge Wanger says, that certified mail is normally an appropriate way to give notice. They don't even cite that in their letter, though, that he said anything about certified mail being the normal way to do things. Well, it says in the second paragraph, further the district court noted, oh, wait a minute. No, it's the oh, the fact that as Judge Wanger's decision noted, the method or even the success of service is irrelevant. And then they go on to say that normally where is it in here, that Wanger, Judge Wanger said it was incumbent upon me to, I guess, become like a telemarketer and call the court every day to find out if they had issued a decision, which is not very sympathetic for the cause because at 20 days, it ruins a lot of rights. When someone files an administrative petition challenging a regulation, which the Horns did in this case, the Horns were claiming that USDA was contending that Horns were required to comply with the regulations, contending that they were handlers. We deny that we are handlers. We wanted the USDA because we are required to exhaust. We can't Counsel, regardless of what we decide here, we're never going to get to the merits of your claim in this proceeding. What you can do, though, the court does have the power to find that the USDA's decision not to engage in rulemaking was arbitrary and capricious. But I don't even understand how that helps you, except in the abstract, because your client's individual case has already been thoroughly litigated. It's been up here twice, I think, already on their individual assertion that there was a problem in applying the order to them because of the handler issue. That was the issue that was untimely filed. But even if they make a prospective rule for the future, I don't understand how that reopens your old litigation. Your Honor, it doesn't reopen my litigation, that old litigation. The Horns are in the business all their life. I personally have brought, I would say, 60 to 75 administrative petitions before USDA in anything from raisins to tree fruit, almonds, peaches, plums, nectarines, et cetera. I am always constantly under the gun when I get something certified mail by the secretary. Most of the time it leaves me like a vacuum. I don't know how long it takes. It takes, you know, five days to file something in district court. It takes forever to get by certified mail. Well, first of all, the regulation doesn't even talk about certified mail. It doesn't. Registered mail. It says registered mail, but they never use registered mail. They said it's certified mail and they said, well, we're following our own rules and the rules don't even allow them to do certified mail. USDA does what it wants to do. But it seems to me that the way to litigate this is actually the way you did litigate it in your earlier iterations of this case. That is, when it affects an individual client, then you can argue that that individual client did not get the proper notice that was called for by the regulation in an individual case, as to an agency's declining to make a rule. Your Honor, we already did the other approach. We got the decision from the judicial officer 30 days after he issued it, which I'm barred. We filed it anyway, contended it was a violation of due process. Judge Wanger threw it out, said he has no jurisdiction to hear it because we didn't file it. This Court affirmed. I understand that, but it still seems to me that the level, that that was the proper avenue to follow. I guess I have some difficulty seeing how the standard of review is met here to force the agency to make a new rule or regulation. Well, to me, it's a lot easier for the Court to order them to engage in rulemaking. And as the horse protection case said, is that we are on special alert when petition is sought modification of rule on the basis of radical change in factual premises. They instituted their service rules in 1960, 20 years before fax machines, 40 years before e-mails. And when the U.S. Supreme Court has stated in Jones v. Flowers that when we are talking about service, the agency is to consider whether the cost effectiveness of, of notifying in something other than certified mail. In this case, it is cheaper for USDA, more efficient, and more timely, given the 20-day period of time, to take the decision and fax it. Put it on the machine, push the button. Everybody's got fax machines. They can scan it and e-mail it, and they don't have to have the problem of using the certified box and machine in their own office that we can't possibly, it seems to me, tell the agency, even if we told them to engage in rulemaking, we certainly couldn't tell them what rule to make. And if they do engage in rulemaking, they may well end up with the same thing they've got now or something that's less favorable to you. I guess there's an assumption in your argument that they have to end up where you want them to end up as a matter of substance. Well, Your Honor, in the, in today's day and age, I think that any court, if they did engage in rulemaking, because you ordered them to, and they declined to change their rule, there would be notice, public comment, public consternation with them using a totally antiquated system to provide notice because the 20-day time limit is jurisdictional. One problem is that your petition for rulemaking was rather bare bones, to put it mildly. You didn't have any evidence which you probably could have collected about this being any kind of a widespread problem in terms of actually affecting anybody. And what I'm saying is that when the practice of filing petitions for rulemaking is not that unusual, but usually when people do it, they put some effort into it in the sense that it's not that unusual. And so I'm not saying that both that there is an actual problem and that it could be remedied by X, Y, or Z methodology. It's a little bare bones-y here in terms of, I mean, basically you're saying this happened to me once. Fix it. Your Honor, had they allowed to proceed, we could have conducted discovery. How am I, a practitioner in California, to know whether attorneys throughout the nation have had similar problems? Well, you started by telling us that you'd handled hundreds of these. Yes. And presumably that could have been brought forward as well. Well, I did state that I've done so many of them. Not some of them I get with 10 days to spare, some 7 days to spare. But this time, twice I've gotten them mutilated. At least once I got it in a timely basis. This I didn't even have a chance. I had no chance to comply with the 20-day rule. How many times that's happened to other attorneys, how would I know? Because normally you proceed with a case and conduct discovery. To me, when we're talking about serious deprivations of due process like what was in this case as to why the pendency of their administrative petition regarding the raisin regulations, and if so, fact that it's done because they're too lazy to put it on a fax machine. And they have faxed me stuff before. They've e-mailed me stuff before. But when it's a judicial officer's ruling or an ALJ's ruling, they send it by certified mail. And yet Judge Wenger thinks I'm supposed to pester him every day, because there's no time frame from which a judicial officer has to rule. How often am I supposed to do it? Secondly, they have no pester system. They have no system where you can electronically check on any of your cases. You know, you'd think with a $150 billion budget they'd have some procedure, at least equal. I know they have. They've admitted they have e-mails and faxes. I just don't understand. If this Court orders them to engage in rulemaking, you can't dictate what the rule is, but then a reviewing court can make a determination whether or not whatever they came up with was arbitrary and capricious. Thank you, counsel. You've exceeded your time. But we asked a lot of questions, so you can have a minute for rebuttal when the time  Mr. Hall. Good morning. May it please the Court. Benjamin Hall on behalf of the Department of Agriculture. Very briefly, the Court has already observed that the substantive issues that were relevant to the petition that was dismissed, whether the warrants are handlers within the meaning of the marketing order, whether they should have been subject to the assessments of civil penalties have been litigated. What I'd like to know is this. The APA does provide for petitions for rulemaking, and there is abundant case law saying that there at least has to be some reasoned response. Why is this your response or reasoned response? I mean, first, especially given the language in what I understand was a later mem dispo, but should have been self-evident, which is that there appears to be a problem here in the sense that the FDA is taking an awfully, awfully harsh position which admits of the real possibility that people are not going to get noticed in the senses they didn't. Well, the record for review is the four corners of the petition for rulemaking, which in this circumstance is, as the Court's already observed, is the four corners  So there's a lot of evidence there. But what the APA requires is that there has to be some reasoned response. But all the response says is Judge Wengler didn't have jurisdiction over your lawsuit, which is totally irrelevant to the question of whether you ought to get some better procedures in place. And our procedures are okay. Well, the first few paragraphs of the order denying the petition for rulemaking address the due process issue because that issue is raised in the petition. That's what those paragraphs are. Okay. But they don't go to the question of whether, you know, somebody who was actually trying to get people some notice might reconsider what you're doing. Right. And the agency's response to that was admittedly brief in that it finds this procedure It wasn't only brief. It was completely noncommunicative. Well, it has to be judged in the context of the substance of the petition, which contains a single anecdotal example of a Well, suppose it was to file a new petition for rulemaking and attach our memorandum disposition, which says, you know, agency, you know, there's nothing we can do about it, but this is really a very strange way to proceed and you're not really giving people notice, essentially. Would that be good enough? I'm sorry. I don't understand. Our original mem dispo, which was Oh, I see. I see what the Court is referring to. Yeah. Well, it would be an unprecedented incursion of the judicial branch into agency decisionmaking to To say, why don't you take a look at this? To order the agency to engage in rulemaking based on That's unprecedented. I think that was not Judge Berzon's question. But at least as I understood it, the current petition contains, as you say, one anecdote. If a new petition is filed, leaving aside the present case, I think it was a hypothetical. If a new petition is filed that contains more systemic information about problems and in addition points out that our court had this mem dispo saying that the application of the current rule can have untoward effects, whether that would perhaps trigger a different response, I think it's a hypothetical. Respectfully, Your Honor, I'd have to see what's in the petition. You know, if there had been provided evidence to the agency, if there were widespread instances of people not receiving mail in time, that might be a different case. I don't know. But Well, I mean, I do have one question, which is, your regulation says registered mail, and it wasn't sent by registered mail, and I gather the practice is not to send it by registered mail. Why is that? The regulation actually says registering and mailing, which is sort of an odd term. It doesn't say registered mail. Registered mail is something different. I find it a little interesting that counsel seems to be suggesting that the agency ought to be employing registered mail as opposed to certified when that's actually a more expensive and more formal method, which seems to counter his argument that they should just send out e-mails and faxes and make phone calls. The regulation says registering and mailing. Is there a significant difference? I don't know. You know, the point of both, it would seem to me, is that there is a created a record of receipt by the party to whom the mail is sent. Registering adds another level of expense and protection to that by tracking it, I guess, at more points along the way. But ultimately, the point of it is to have a receipt that the person received it. I would also point out that there are numerous things one could do to alleviate this problem. You could, at least when you know somebody didn't get the notice, you could do something. Or you could use other forms of notice, or you could lengthen the time from 20 days to — that may be statutory. Is 20 days statutory? It is statutory. So I guess you couldn't do that. In any event, having sat up here and seen a lot of notice procedures, this one does seem very harsh.  It's a very — it's found to process violations where there was a problem with regard to knowing somebody didn't get notice and not doing anything to extend the time. So I think you — I mean, this is sort of a lecture that says whether you're going to do it in response to a rulemaking or not, taking a look at this problem would be an awfully good idea. Well, that actually demonstrates why it's a rulemaking. The decision of whether to initiate rulemaking is essentially a legislative one, as the courts have said repeatedly. Not a legislative one. It's an executive one. And there is a — I mean, unless you're going to take the Administrative Procedure Act and just, you know, throw it away, there is a procedure for doing this under the APA, and there is reviewability of a very deferential kind, and there are cases in which it's been reviewed. So that much is true. My point, Your Honor, is that the process of deciding what procedures to employ, what the costs of those procedures will be, that's not the problem. But that's why, in response to a petition for rulemaking, some indication that the agency has gone through that process in determining not to engage in rulemaking seems to me to be required. I mean, and here we have nothing. I mean, we have a sentence that says we've decided our procedures are fine. That is all we've got. So why don't we — why shouldn't we send it back to you and say, tell us more? Well, that is as far as we can go. Why do you not decide not to engage in rulemaking, even with regard to this one egregious example of something gone wrong? Why isn't that — why can't — why don't you do something to fix these kinds of — a problem like this? Well, the Court's suggestion is something different. You can say why. You can say why. You can say we don't want to engage in rulemaking because it's too expensive to engage in rulemaking, or you can say something other than our procedures are fine. I understand the Court's question. But the — what the courts have done, there are, as far as I know, two cases in which the courts have even determined that it was appropriate to send it back to the agency at all. And those were cases involving grave concerns of health and safety. The EPA, Massachusetts v. EPA case and the American Horse case. And in both of those examples, the Court simply found that the reasoning provided by the agency did not comply with the terms of a specific statute dealing with substantive health and safety issues. In the EPA case, EPA case dealing with whether the agency could regulate emissions of greenhouse gases by automobiles, and the American Horse case dealing with methods used to deliberately injure show horses. In both of those cases, the Court said we're not going to compel the agency to engage in rulemaking, but we'd like the agency to provide a better explanation. That's as far as the courts have gone, and the courts have done that only in cases involving substantive regulations relating to health and safety concerns. I would only add that certainly if, as counsel said today, and it was brief, that he's been litigating before this agency for 20 years, he's filed 60 to 75 administrative petitions. His petition mentions a single example of a piece of mail that he says did not reach his office in time. The agency's response to that, while admittedly very brief, is not insufficient in the context of the petition itself. And that I'd submit. Thank you, counsel. Mr. Layton, you may have a minute for rebuttal. A couple of quick things, Your Honor. With respect to our petition for rulemaking, if you look at, beginning at ER 60, there's a number of paragraphs stating why rulemaking should occur regarding the timely notice and also request to engage in rulemaking to amend the rules to require prompt notice such as facsimile or e-mail or even overnight delivery. And normally, if they had engaged in rulemaking, there could have been notice and comment for people to also state whether or not they've also had problems with certified mail. So I think the petition for rulemaking, I wasn't trying to tell them what to write. I was saying you need it, and I explained the circumstance in my case. Secondly, USDA has engaged in rulemaking with respect to the same section of the administrative practice, but only when it was designed to help them. The rule went into effect in 1960. In 2002, they amended 900.69d to change the former language which stated that when the document was required to be filed with the hearing clerk, it would be timely filed based on the state of the date of the postmark, but USDA claimed that that causes uncertainty because the hearing clerk must wait for days after the document or paper is required. So they changed the rule to state that it's only timely filed once the clerk receives it, though they want timely filings, even though none of their due process rights are affected. They won't be deprived of any property if they don't get it in time. But they're not going to change the rules for us. And it just seems that it would be arbitrary and capricious to allow them to get away with it. The Court, this Court can order them to engage in rulemaking, and as the American original rule is based upon antiquated or the factual reasons for the rule back then, are just totally obsolete. They don't they they no longer make sense. Thank you, counsel. I think we understand the position of both counsel. We appreciate your helpful arguments. The case is submitted and we are adjourned. Thank you.
judges: Alarcon, Graber, Berzon